1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF NEVADA

3    UNITED STATES OF AMERICA,    )
                                  ) Case No. 2:13-cr-00018-JCM-GWF
4             Plaintiff,          )        2:13-cr-174-JCM-CWH
                                  )
5                                 ) Las Vegas, Nevada
          vs.                     ) January 23, 2015
6                                 ) 10:35 a.m.
     LEON BENZER (1),             )
7                                 ) Change of Plea
              Defendant.          )
8    _____)

9                       TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE JAMES C. MAHAN
10                 UNITED STATES DISTRICT COURT JUDGE

11   APPEARANCES:

12   For the Government:

13           CHARLES LA BELLA
             United States Department of Justice
14           Fraud Section, Criminal Division
             880 Front Street, Room 6293
15           San Diego, California 92101
             (619)546-7579
16
             THOMAS B.W. HALL
17           United States Department of Justice
             Criminal Division, Fraud Section
18           1400 New York Avenue NW, Room 3508
             Washington, DC 20530
19           202-616-1682

20   Appearances continued on page 2.

21


22


23   Court Reporter:  Katherine Eismann, CSR, CRR, RDR
                     (702)431-1919  eismann.csr@gmail.com
24
     Proceedings reported by machine shorthand, transcript produced
25   by computer-aided transcription.

```
 1    Appearances continued:

 2    For the Defendant Leon Benzer:

 3             DANIEL J. ALBREGTS, ESQ.
                601 S. 10th Street, Suite 202
 4             Las Vegas, Nevada 89101
                702-474-4004
 5
                FRANNY A. FORSMAN, ESQ.
 6             P.O. Box 43401
                Las Vegas, Nevada 89116
 7             702-501-8728

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  (Friday, January 23, 2015, 10:35 a.m.)

 2                            --oOo--

 3                    P R O C E E D I N G S

 4          COURTROOM ADMINISTRATOR:  Court is now in session.

 5              This is the time set for change of plea of Leon

 6    Benzer, in 2:13-cr-18-JCM-GWF and 2:13-cr-174-JCM-CWH, United

 7    States of America versus Leon Benzer.

 8              Counsel, please note your appearances for the record.

 9              THE COURT:  Mr. La Bella.

10              MR. LA BELLA:  Good morning, Your Honor.  Charles

11    La Bella and Thomas Hall for the government.

12              THE COURT:  Thank you.  I went back to my law school

13    several months ago and met a man named -- a classmate of mine

14    named John Arterberry.  He said, "Say hi to Chuck for me."  So,

15    I've said "Hi" to Chuck.  All right.

16              MR. LA BELLA:  I know John very well.  Thank you.

17              THE COURT:  All right.  Mr. Albregts.

18              MR. ALBREGTS:  Good morning, Your Honor.  Dan

19    Albregts and Franny Forsman, on behalf of Leon Benzer, who is

20    present.  We want to thank the Court for setting this so

21    quickly.

22              THE COURT:  And what's your co-counsel's name?

23              MR. ALBREGTS:  Franny Forsman.

24              THE COURT:  All right.

25              MR. ALBREGTS:  F-O-R-S-M-A-N.
```

1            THE COURT:  Okay.

2            MR. ALBREGTS:  I think her Bar number is like 10 or

3   something.

4            THE COURT:  Something like that.  She's a former

5   public defender for the --

6            MR. ALBREGTS:  She's also a member of our team.

7            THE COURT:  -- district, so I'm teasing her a little

8   bit if that's permissible.

9            All right.  Everybody ready to proceed this morning?

10           MR. ALBREGTS:  We are, Your Honor.

11           THE COURT:  Let me ask you, counsel and the

12   defendant, to approach the lectern, please.  I'm going to have

13   the clerk swear the defendant.

14      (Defendant sworn.)

15           THE COURT:  Mr. Benzer, do you understand that having

16   been sworn, your answers to my questions are subject to the

17   penalty of perjury if you do not answer truthfully?

18           THE DEFENDANT:  I do.

19           THE COURT:  Now, Mr. Albregts, has the defendant been

20   furnished with a copy of the charge against him?

21           MR. ALBREGTS:  He has.

22           THE COURT:  And does he waive the reading of the

23   indictment?

24           MR. ALBREGTS:  We do.

25           THE COURT:  Mr. Benzer, do you understand the charge

1  against you?

2          THE DEFENDANT:  I do.

3          THE COURT:  Do you read, write, and understand the

4  English language?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  All right.

7          Mr. Albregts, how does the defendant intend to plead?

8          MR. ALBREGTS:  Guilty, Your Honor.

9          THE COURT:  Both -- all counts in both indictments;

10 correct?

11         MR. ALBREGTS:  Yes, sir.

12         THE COURT:  Is that correct, sir?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Before accepting your guilty plea, there

15 are a number of questions I'm going to have to ask you in order

16 to assure myself that you are entering a valid plea.  If you do

17 not understand any of my questions, will you let me know, so I

18 can rephrase the question?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And then at any time, if you want to take

21 a break during the proceedings, so you can discuss matters in

22 private your attorneys, will you let me know so I can give you

23 that opportunity?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Thank you.  How old are you, sir?

1              THE DEFENDANT:  48.

2              THE COURT:  How far did you go in school?

3              THE DEFENDANT:  High school plus a couple semesters

4      of college.

5              THE COURT:  Have you taken any drugs, medicine, pills

6      of any kind, or drunk any alcoholic beverages in the past 24

7      hours?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Have you been treated for any mental

10     illness or addiction to narcotic drugs of kind?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Do you understand what's happening today?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Tell me, in your own words, what's

15     happening today.  Why are we here?

16             THE DEFENDANT:  To enter a plea.

17             THE COURT:  You are going to plead guilty to two

18     indictments; is that correct?

19             THE DEFENDANT:  That's correct.

20             THE COURT:  All right.  Does either counsel have any

21     doubt -- or does any counsel have any doubt as to the

22     defendant's competence to plead in the matter?

23             MR. LA BELLA:  None from the government, Your Honor.

24             MR. ALBREGTS:  No, Your Honor.

25             THE COURT:  Based on counsel's representation and the

1    Court's own observation of the defendant, I find the defendant

2    is competent to plead in this matter.

3              Now, Mr. Benzer, have you had ample opportunity to

4    discuss your case with Mr. Albregts and Miss Forsman?

5              MR. ALBREGTS:  Yes, I have.

6              THE COURT:  Are you satisfied to have them as your

7    attorneys?

8              THE DEFENDANT:  Yes, I am.

9              THE COURT:  Do you understand that under the

10   constitution and laws of the United States, you are entitled to

11   have attorneys represent you at every stage of the proceedings

12   in this case?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And do you understand that under the

15   constitution and laws of the United States, you are entitled to

16   a trial by jury on the charges contained in the indictment?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And do you understand that in order to

19   convict you, all of the jurors would have to agree that you

20   were guilty?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you understand that at a trial, you

23   would be presumed to be innocent, and the government would have

24   to overcome that presumption and prove you guilty beyond a

25   reasonable doubt, by competent evidence; and you would not have

1    to prove that you were innocent?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Do you also understand that in the course

4    of a trial, the witnesses upon whom the government is relying

5    would have to come to court and testify in your presence, and

6    your attorneys could cross-examine those witnesses and could

7    object to any evidence offered by the government?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you also understand that at a trial,

10   your attorneys would have the right to call witnesses and to

11   present evidence on your behalf?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And do you also understand at a trial,

14   while you would have a right to testify, if you chose to do so,

15   you would also have the right not to testify?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  If I accept your guilty plea, do you

18   understand that you will be waiving or giving up your right to

19   a jury trial and all the other rights I have just discussed?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Do you understand there will be no

22   further trial, but I will simply enter a judgment of guilty and

23   sentence you based on your guilty plea?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  In pleading guilty, do you understand you

1     also will have to waive your right not to testify against

2     yourself, because I am going to have to ask you questions about

3     what you did in order to satisfy myself that you are guilty as

4     charged?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  And do you also understand that in order

7     for me to accept your guilty plea, you will have to admit that

8     you committed the crimes charged in both of the indictments --

9     both of the pending indictments.  Do you understand that?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Are you willing to give up your right not

12     the testify against yourself in order for me to accept your

13     guilty plea today?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Have you read the indictments against

16     you?  Have you read a copy of the indictments?

17           THE DEFENDANT:  Yes, I have.

18           THE COURT:  And have you discussed with your

19     attorneys the charges in the indictments to which you intend to

20     plead guilty?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Now, Mr. Albregts, does pleading guilty

23     affect this defendant's immigration status?

24           MR. ALBREGTS:  It does not, Your Honor.

25           THE COURT:  All right.  You were charged in the

1    indictments with violations of Title 18, United States Code,

2    Sections 1341, 1343, and 1349, which make wire fraud, mail

3    fraudulent, and conspiracy to commit wire and mail fraud

4    crimes.  And you are also charged with a violation of Title 26,

5    United States Code, Section 7201, which makes tax evasion a

6    crime.

7           The elements of the offense of conspiracy to commit

8    wire and mail fraud are:  First, there was an agreement between

9    two or more persons to commit mail fraud and wire fraud; and,

10    second, the defendant was a party to or a member of that

11    agreement; and third, the defendant became a member of the

12    conspiracy knowing of at least one of its objects and intending

13    to help accomplish it.

14           The elements of wire fraud are:  First, the existence

15    of a scheme to defraud; and, second, the use of wire, radio or

16    television to further the scheme; and, third, a specific intent

17    to defraud.

18           And the elements of mail fraud are:  First, the

19    existence of a scheme to defraud; and, second, the use of mail

20    to further the scheme; and, third, a specific intent to

21    defraud.

22           The elements of tax evasion are:  First, an

23    affirmative act by a defendant to evade or defeat a tax; and,

24    second, an additional tax due and owing; and, third,

25    willfulness as defined as an intentional violation of a known

1   legal duty, i.e., to report all of one's income on your tax

2   return and to pay all required taxes.

3          Do you understand that all of that is what the

4   government would have to prove in order for you to be convicted

5   of the crimes charged in indictments?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Do you know the maximum sentence I might

8   impose on the charges in the indictments to which you are

9   seeking to plead guilty?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Are you aware the maximum possible

12   penalty for -- per count rather -- the maximum possible penalty

13   per count, for violations of 18 USC, Sections 1341, 1343, and

14   1349, would be a fine of $1 million, or a term of imprisonment

15   of 30 years, or both a fine and imprisonment.

16          And the maximum possible penalty per count for

17   violations of 26 USC, Section 7201, would be a fine of $250,000

18   or twice the gross gain or loss resulting from the offense, or

19   a term of imprisonment of five years, or both a fine and

20   imprisonment for each count.

21          Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you also understand that a special

24   assessment fee of $100 per count will be imposed at the time of

25   sentencing?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you also understand that in every

3   criminal case in which a defendant may be sentenced to more

4   than one year in prison, as in this case, that in addition to

5   any maximum possible penalty, the Court may also order a term

6   of supervised release to follow that imprisonment?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you understand supervised release

9   could be imposed here for a term of up to five years per count?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Do you understand that while on

12  supervised release, you would be required to abide by

13  conditions specified by the Court, and that supervised release

14  could be revoked if you violated any of those conditions?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And do you understand that if supervised

17  release is revoked for any reason, you may be imprisoned for

18  the full term of supervised release without credit for time

19  spent on post-release supervision?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And do you also understand the combined

22  time spent in prison, under a sentence of imprisonment, added

23  to the time spent in prison, if supervised release is revoked,

24  could exceed the term of your original sentence?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And do you also understand the Court may

2    order you to make restitution to any victim of the offense to

3    which you are pleading guilty?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you understand the offenses to which

6    you are pleading guilty are felony offenses?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Excuse me just a moment.

9          For the record, I had to blow my nose.  I apologize.

10         All right.  You understand they are felony offenses;

11   is that correct?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  If your plea is accepted, you will be

14   adjudged guilty of felonies, and that may deprive you of

15   valuable civil rights, such as the right to vote, the right to

16   serve on a jury, or the right to possess any kind of a firearm.

17   Do you understand that?

18         THE DEFENDANT:  Yes, I do, Your Honor.

19         THE COURT:  Has anyone threatened you or forced you

20   to plead guilty?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Has anyone told you, if you do not plead

23   guilty, further charges will be brought against you?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  Has anyone told you, if you do not plead

1    guilty, some other adverse action will be taken against you?

2              THE DEFENDANT:  Yes, Your Honor.  I mean, no, Your

3    Honor.

4              THE COURT:  That's no?

5              THE DEFENDANT:  That's a no for the record.

6              THE COURT:  And are you pleading guilty because of

7    any coercion from or fear of codefendants?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Is your willingness to plead guilty a

10   result of prior discussions and negotiations between your

11   attorneys and the attorneys for the government?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And do you understand that plea

14   agreements are permissible, and that you and all the attorneys

15   have a duty to disclose to the Court the existence of a plea

16   agreement and the terms of that agreement?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Have your attorneys entered into a

19   written plea agreement on your behalf with the government?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And Mr. Benzer, did you sign the plea

22   agreement?

23             THE DEFENDANT:  Yes, I did, Your Honor.

24             THE COURT:  Before you signed it, did you read it?

25             THE DEFENDANT:  Yes, I did, Your Honor.

1          THE COURT:  Did you understand all the terms of the

2    plea agreement?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And did you discuss it with your

5    attorneys?

6          THE DEFENDANT:  Yes, I did.

7          THE COURT:  And have they answered all your

8    questions?

9          THE DEFENDANT:  They have.

10          THE COURT:  All right.  Mr. La Bella, what's the

11    substance of the plea agreement?

12          MR. LA BELLA:  Your Honor, there is a plea agreement,

13    and it's not binding on the court.  It is that the defendant

14    will plead guilty to all counts in all indictments, the tax

15    evasion and the fraud indictments, and no additional charges

16    will be brought against him in connection with those activity.

17          The sentencing guidelines, the parties recognize that

18    they are going to apply, and the Court must refer to them.  But

19    as far as the sentencing guidelines, the parties have only

20    agreed to the following:

21          That the base offense level is seven; that the number

22    of victims enhancement is plus two, pursuant to guidelines

23    Section 2B1.1(b)(2)(A)(i), and everything else basically is

24    open, Your Honor, for the time of sentencing.  That the

25    government recognizes that the defendant has accepted

1    responsibility, so is going to recommend the two point level

2    adjustment.

3              And the government also recognizes that, by virtue of

4    the plea of guilty, this far in advance of trial, that the

5    defendant will have saved the government and the Court

6    significant time and effort.  And in that regard, assuming all

7    other conditions are met, we are going to give him credit for

8    the third acceptance of guilt point on the sentencing

9    guidelines.

10             The criminal history and everything else will be

11   decided by the Court and the probation department

12   presentencing.  The other sentencing matters are that the --

13   the defendant reserves the right to appeal his sentence, but

14   not his conviction or any other aspect of his conviction.  But

15   he does preserve the right to appeal his sentence after it's

16   imposed by the Court.

17             As far as fines and special assessments, there are no

18   agreement on fines, special assessments, and restitution, other

19   than the defendant recognizes he has to pay the special

20   assessment per count of conviction.

21             And again, the waiver of appeal, in exchange for the

22   concessions made by the United States, in the plea memorandum,

23   the defendant knowingly and expressly waives his right to

24   appeal his guilty plea and conviction.  He also waives his

25   right to any collateral challenges, including any claims under

1    28, USC, Section 2255, to the conviction and to the procedures

2    by which the Court adjudicated guilty, except non-waivable

3    claims of ineffective assistance of counsel.

4              The defendant only reserves the right to appeal only

5    his sentence and the manner in which the sentence was

6    determined, on the grounds set forth in Title 18, United States

7    Code, Section 3742.  That's the only exception, Your Honor.

8              As far as the penalties, Your Honor has gone over the

9    penalties and the elements.  As far as the elocution, the

10   elocution has been recited in paragraphs 25 through 45 of his

11   plea memorandum in detail.

12             It's something that the government and the defendant

13   have reviewed and accepted, and the defendant specifically

14   admits and declares, under penalty of perjury, that they -- all

15   the facts stated in there are accurate, true, and correct.

16             I believe that's it, Your Honor.  And those

17   agreements apply to the tax evasion indictment as well, but

18   there are no understandings with respect to the guidelines vis

19   a vis the tax indictment.  That's all going to be left for the

20   time of sentencing.

21             THE COURT:  All right.

22             MR. ALBREGTS:  I think that's all.

23             THE COURT:  Thank you.  Mr. Albregts, do you agree

24   the substance of the plea agreement has been correctly stated?

25             MR. ALBREGTS:  Yes, Your Honor.

1          THE COURT:  Mr. Benzer, is that your understanding of

2     the terms to which you agreed in order to resolve the criminal

3     charges against you?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Has anyone made any promise to you, other

6     than those set forth in the plea agreement, that induced you to

7     plead guilty?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Do you understand that any recommendation

10    of sentence, agreed to by your attorney and the attorney for

11    the government, is not binding on the Court, and that you

12    might, on the basis of your guilty plea, receive a more severe

13    sentence than that requested or recommended?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And do you understand if that were to

16    happen, you would not have the right to withdraw your guilty

17    plea?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Under the Sentencing Reform Act of 1984,

20    the United States Sentencing Commission has issued advisory

21    guidelines for judges to follow in determining the appropriate

22    sentence in criminal cases.

23         Have you and your attorneys talked about how those

24    sentencing commission guidelines might apply to the facts of

25    your case?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And have they answered all your

3    questions?

4          THE DEFENDANT:  They have, Your Honor.

5          THE COURT:  Do you understand the Court will not be

6    able to determine the appropriate guideline sentence for your

7    case until after the presentence report has been completed?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And do you understand after it has been

10   determined what guideline applies to your case, I have the

11   discretion to impose what I consider to be a reasonable

12   sentence, but it may be a sentence that is in excess of the

13   sentence called for by the guidelines?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And do you understand if that were to

16   happen, you would not have the right to withdraw your guilty

17   plea?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Do you also -- excuse me.  Do you also

20   understand that under some circumstances, to the extent that

21   you have not waived the right, you or the government may have

22   the right to appeal any sentence that I impose?

23         THE DEFENDANT:  Yes, Your Honor.

24         MR. LA BELLA:  If I understand your plea agreement

25   correctly, at paragraph G, Page 4, you have waived the right to

1    appeal your guilty plea and conviction but not -- you don't

2    have the right to appeal your sentence; is that the

3    understanding of the parties?

4              THE DEFENDANT:  Yes, Your Honor.

5              MR. ALBREGTS:  He has the right to appeal the

6    sentence.

7              THE COURT:  Let me try -- I stated the reverse.  Let

8    me try it again.

9              MR. ALBREGTS:  I may have misheard you.  I'm sorry.

10              THE COURT:  Under paragraph G, Page 4, you have

11    waived the right to appeal your guilty plea and conviction;

12    correct?

13              MR. ALBREGTS:  Yes.

14              THE DEFENDANT:  That's correct, Your Honor.

15              THE COURT:  All right.  And that's all you have

16    waived, so -- I mean, you still have the right to appeal the

17    sentence.  Whatever sentence is imposed, you have the right to

18    appeal that; correct?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  I want to be sure that everybody's on the

21    same page.

22              MR. ALBREGTS:  And I think we are.

23              THE COURT:  And do you agree, Mr. La Bella, that's

24    it?

25              MR. LA BELLA:  That's accurate, Your Honor.

1      THE COURT:  Because this waiver is a little bit

2  different from the ones we usually see here, so I just want to

3  go -- be very careful.

4      MR. ALBREGTS:  That's true, Your Honor.

5      THE COURT:  You have also waived all collateral

6  challenges, including any claims under 28, USC, Section 2255,

7  to your conviction, sentence, and the procedure -- I'm sorry --

8  to your conviction, not the sentence.

9      THE DEFENDANT:  That's correct, Your Honor.

10     THE COURT:  All right.  Now, let me try that again,

11 because I was going on automatic pilot, and I misstated.  Let

12 me try it again.  You have also waived all collateral

13 challenges?

14     THE DEFENDANT:  The collateral challenges, yes, Your

15 Honor.

16     THE COURT:  Including any claim, under USC, Section

17 2255, to your conviction and the procedures by which the Court

18 adjudicated guilt, except for non-waivable claims of

19 ineffective assistance of counsel; correct?

20     THE DEFENDANT:  Yes, Your Honor.

21     MR. LA BELLA:  You have also retained your 2255 --

22 28, USC, Section 2255 rights concerning the sentence that may

23 be imposed.

24     THE DEFENDANT:  Yes, Your Honor.

25     THE COURT:  I mean, assuming there are -- I don't --

1    I haven't analyzed it to determine if there are any rights.

2    But if there are any to the sentence under 28 USC, Section

3    2255, you've retained the right to appeal that; correct?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  All right.  Everybody agreed with that?

6              MR. ALBREGTS:  As to the sentence, yes, Your Honor.

7              MR. LA BELLA:  Yes.

8              THE COURT:  Okay.  Do you also understand that parole

9    has been abolished, and if you are sentenced to prison, you

10   will not be released on parole?

11             THE DEFENDANT:  May I have a second, Your Honor?

12             THE COURT:  Yes, sir.  Take a moment.

13        (Off-the-record discussion.)

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Do you also understand that any relevant

16   conduct of yours, whether charged in the indictment or not,

17   might still be considered in the presentence report and might

18   increase the sentence to be imposed by the Court?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Do you understand if that were to happen,

21   you would not have the right to withdraw your guilty plea?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Mr. Albregts, in your plea packet, there

24   is a written summary of the government's evidence against this

25   defendant to support his guilty plea.  Do you agree with that

1   summary?

2            MR. ALBREGTS:  Yes, I do, Your Honor.

3            THE COURT:  Mr. Benzer, do you agree with the summary

4   about what you did?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Do you have any questions about the

7   summary?

8            THE DEFENDANT:  No, Your Honor.

9            THE COURT:  How do you plead then to the indictments,

10  guilty or not guilty?

11           THE DEFENDANT:  Guilty, Your Honor.

12           THE COURT:  Are you pleading guilty because in truth

13  and fact you are guilty and for no other reason?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Tell me, in your own words, what you did

16  that has convinced you to plead guilty.

17           THE DEFENDANT:  I had an agreement with other

18  defendants to take control of the HOAs to steer construction

19  defect cases to my company and certain lawyers.  We did this

20  through fraudulent acts outlined in the plea agreement.

21           THE COURT:  All right.  Well, is it true that you

22  acknowledge that you knew of the -- that you were a member of a

23  conspiracy, and you knew of the unlawful purpose of the

24  conspiracy and willfully joined it.  And you are therefore

25  responsible, as a member of the conspiracy, for those actions

1  taken by your conspirators in furtherance of the conspiracy; is

2  that true?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Is it also true that you, together with

5  your attorney coconspirator -- whom I assume is -- who I assume

6  is Nancy Quon; is that correct?

7          MR. ALBREGTS:  Yes, Your Honor.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Is that correct, Mr. La Bella?

10          MR. LA BELLA:  Yes, Your Honor.

11          THE COURT:  And then just -- because I want to use

12  the right pronoun when we get down to that.

13          MR. LA BELLA:  Yes, Your Honor.

14          THE COURT:  Together with Miss Quon developed a

15  scheme to take over control of the targeted homeowners

16  associations in the Las Vegas area; is that true?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And these targeted HOAs had to meet

19  certain criteria, including number of units and potential for

20  construction defect litigation.  And the scheme began with you

21  gaining control of a majority of the board of directors' seats

22  on a targeted HOA; is that true?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And this was done through recruiting

25  straw purchasers, who were willing, for a fee, to allow you to

1    use their names and credit scores to purchase condos at those

2    targeted HOAs; is that true?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And the straw purchases were funded by

5    you and also in part bankrolled by Miss -- by your attorney

6    coconspirator, Miss Quon; is that true?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And she had agreed to advance you over

9    $2 million in connection with this scheme; correct?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And the object was, through controlling

12   HOA boards, to steer construction defect litigation to her law

13   firm.  And in return for doing that, she agreed to share

14   10 percent of the attorney's fees with you at the conclusion of

15   the construction defect case; is that true?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Is it also true that you planned to have

18   construction defect or remediation work steered to your

19   company, Silver Lining Construction, through the same

20   controlled homeowner boards; is that true?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And the conspiracy funded all expenses

23   associated with the purchase of condominiums by the straw

24   purchasers, as well as all expenses associated with the condos;

25   is that true?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And those expenses included earnest

3   money, down payments, mortgage payments, HOA dues, and taxes.

4   And also these straw buyers were promised a yearly fee, ranging

5   from approximately 4- to $5,000, for the use of their names and

6   credit scores, which were used to obtain financing for the

7   condos; is that true?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Is it also true that many straw buyers

10  routinely lied on mortgage loan applications about the source

11  of the down payment and/or the primary use of the condo in

12  order to secure financing or more favorable rates; true?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And is it also true that many straw

15  buyers were also designated by you to run for and to serve on a

16  HOA board of directors; is that true?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  And that at times the person who was to

19  run for the board of directors' seat would be different from

20  the straw owner, whose credit had been used for the original

21  purchase of the condo.  And in those cases, the straw owner

22  agreed to allow a quitclaim deed to be executed that would

23  convey a percentage ownership in the condominium to the

24  designated board of directors' candidate; is that correct?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And that way the so-called candidate --

2     hand-picked candidate could run as an owner of the particular

3     condo; true?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And all of the directors on these various

6     boards controlled by you, when elected, received money from you

7     in return for taking direction and instructions from you and

8     your coconspirators as to what action they should take as

9     members of the respective HOA board of directors; correct?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Is it also true that once in control of a

12     board of directors, you would direct that an attorney selected

13     by you be hired by the captive board to serve as general

14     counsel for the homeowners association; is that true?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Is it also true that the coconspirator,

17     Keith Gregory, who at that time was one of your attorneys, was

18     designated by you to be hired as general counsel at Vistana and

19     at Sunset Cliffs; is that true?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And coconspirator David Amesbury, who was

22     also one of your attorneys, as well as your business partner in

23     the Courthouse Cafe, was hired at your direction as general

24     counsel at Chateau Versailles, and hired as a special election

25     master at Petal Creek -- Pebble Creek and Chateau Nouveau; is

1    that true?

2             THE DEFENDANT:  Yes, Your Honor.

3             THE COURT:  And coconspirator Barry Levinson, another

4    attorney, was also designated by you to serve as general

5    counsel at Park Avenue and at Pebble Creek.  And that all of

6    these attorneys were hired to -- or I should say each of these

7    attorneys -- these three attorneys were hired to represent the

8    homeowners association.  They actually took direction from you

9    and your coconspirators, assisted the goals of the conspiracy,

10   and were paid by you for the work that they performed; is that

11   true?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  And is it also true that you selected

14   certain management companies to be hired by your controlled

15   board members, including Platinum Management, as well as two

16   management companies that you secretly owned, Family HOA and

17   Crystal, and they were hired at several targeted HOAs including

18   Vistana; is that true?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  Once the attorney and management

21   companies were in place, you and the coconspirators were able

22   to direct the actions of the homeowners associations and able

23   to rig board of directors' elections in order to assure your

24   continued control of the board of directors; is that true?

25            THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And you and your coconspirators were

2    successful in gaining control at Vistana Park -- I'm sorry --

3    at Vistana, Park Avenue, Chateau Versailles, Chateau Nouveau,

4    and Pebble Creek; is that true?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And you attempted also to gain control at

7    Jasmine and other homeowners associations; correct?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  It is also true that the paid straw

10   owners included Sam Ruvolo at Chateau Nouveau and Park Avenue,

11   and Edith Gillespie at Vistana and Chateau Versailles; true?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And in securing a loan for

14   Miss Gillespie's unit at Chateau Versailles, she stated on her

15   loan application that she worked for Silver Lining

16   Construction, although she had never worked for your company;

17   is that true?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And she was paid for recruiting other

20   straw owners?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And the paid directors included, among

23   others, Sam Ruvolo, at Chateau Nouveau and Park Avenue, and

24   Charles McChensey -- strike that -- Charles McChesney, M-C

25   capital C-H-E-S-N-E-Y, at Chateau Nouveau, and David Ball at

1   Chateau Nouveau; is that true?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And then at Vistana, in order to secure a

4   contractual right of first refusal and obtain a mobilization

5   fee, you, with the assistance of Keith Gregory and David

6   Amesbury, two coconspirators, created the illusion that an

7   emergency HOA meeting was needed in September 2007.

8          And through the efforts of Mr. Amesbury, Mr. Gregory,

9   Ralph Priola, Steve Wark and other coconspirators, at the

10  direction of you, you were able to schedule an emergency HOA

11  meeting, and Silver Lining Construction was awarded over

12  $1 million as a mobilization fee in a construction defect

13  remediation contract there; is that true?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Is it also true at Chateau Versailles,

16  Chateau Nouveau, and Park Avenue, through controlling the board

17  of directors at each of those, the management company and the

18  attorneys hired by the board of directors, which you

19  controlled, you were able to award -- you were able to direct

20  the awarding of construction defect litigation cases to your

21  coconspirator attorneys, and to have Silver Lining Construction

22  in place to do the resulting remedial work once the

23  construction defect cases settled; is that true?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And then at Jasmine, you attempted to

1    take over the board of directors through three straw

2    purchasers, who initially agreed to become owners to run for

3    the Jasmine Board of Directors, and in return, from money from

4    you, were to steer potential construction defect litigation and

5    remediation work to a law firm and construction company

6    designated by you; is that true?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And then for the tax evasion conduct, as

9    of April 2007, you had failed to pay your personal tax

10   liability owed for the years -- the tax years 2001 through

11   2005, and the past due liability of Silver Linings Construction

12   for the employment tax liability and the unemployment tax

13   liability, each of which was a material amount of money owed;

14   is that true?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And the IRS thereafter issued a notice of

17   intent to file a levy.  And on or about May 9, 2007, you

18   appealed the process, indicating you wanted to enter into an

19   offer in compromise, with the IRS, to pay a portion of what was

20   owed, and that was to serve as full satisfaction of all your

21   tax liabilities; is that true?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And during this offer and compromise

24   process, the IRS requested detailed financial information from

25   you in order to accept less than the full amount of tax due and

1  owing in satisfaction of the outstanding tax liability; is that

2  true?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And then on or about August 29, 2007, you

5  opened the personal bank account ending in the four numbers

6  7214 with US Bank in your own name; is that correct?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And then in or about March -- let me try

9  that again.  Between in or about March 2005 and/or January --

10  about January 2008, you and Silver Lining Construction received

11  in excess of approximately $7 million from the Vistana

12  Homeowners Association for work purportedly done pursuant to

13  Silver Lining Construction's contract with the Vistana HOA; is

14  that true?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  As part of the payments, on or about

17  September 21, 2007, you received a wire transfer in the amount

18  of $1,098,000 into account ending in the four numbers 7214,

19  from the Vistana Homeowners Association, for work purportedly

20  performed by Silver Lining Construction pursuant to its

21  contract with the Vistana HOA; is that true?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  And you used most of the funds from the

24  Vistana HOA, in account 7214, for your own personal use; is

25  that correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Excuse me.  And then on or about

3   September 25, 2007, as part of the offer and compromise process

4   with the IRS, you, or others acting on your behalf, filed IRS

5   Forms 433-A and 433-B that did not disclose the existence of

6   the bank account ending in the numbers 7214 or the assets

7   therein; is that true?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Then on or about September 25, 2007, here

10  in the State and Federal District of Nevada and elsewhere, you,

11  who at that time owed a deficiency on your employment taxes,

12  for tax period September -- for the tax periods ending

13  September 30, 2003, December 31, 2003, and March 31, 2004, and

14  on your unemployment taxes for tax year 2003, all in a material

15  amount of money, willfully made attempts to evade the payment

16  of the employment and unemployment taxes owing, including but

17  not limited to, opening and causing to be opened and using and

18  causing to be used a bank account at US Bank, which was

19  established in your name, to conceal money and assets.

20          And you also prepared and caused to be prepared and

21  filed and caused to be filed material false financial forms

22  with the IRS, while Silver Lining Construction continued to owe

23  an outstanding employment and unemployment tax liability; is

24  that true?

25          THE DEFENDANT:  Yes, Your Honor.

1              THE COURT:  All right.  Is that sufficient for the

2    government, Mr. La Bella?

3              MR. LA BELLA:  Yes, Your Honor.

4              THE COURT:  Thank you.  All right, Mr. Benzer.  Since

5    you acknowledge that you are in fact guilty as charged in the

6    indictments -- the two indictments -- since you know your right

7    to trial, what the maximum possible punishment is, and since

8    you are voluntarily pleading guilty, I will conditionally

9    accept your guilty plea.

10             It is the finding of the Court, in the case of the

11   United States versus Leon Benzer, that the defendant is fully

12   competent and capable of entering an informed plea, and that

13   his plea of guilty is a knowing and voluntary plea, supported

14   by an independent basis in fact, containing the essential

15   elements of the offenses charged.  Therefore, his plea is

16   conditionally accepted.

17             Mr. Benzer, I am now going to order a presentence

18   investigation report.  I urge your full and complete

19   cooperation in providing information for the report; because,

20   obviously, the terms of it are important to the Court in

21   determining what your sentence will be.

22             I want you to understand that any time you meet with

23   the probation officer, to provide information for the report,

24   you have the right to have your attorneys present with you.

25   Then prior to the sentencing hearing, you will have the

1  opportunity to read, review, and comment upon the report.

2          Finally, at the sentencing hearing, you may address

3  the Court, you may have your attorneys speak on your behalf, or

4  both you and your attorneys may speak.  It's your option.  Do

5  you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  I want you to understand the presentence

8  report may have some importance to you that continues beyond

9  the sentencing date.  If you are sentenced to prison, this

10  report follows you throughout your term of incarceration, and

11  any time the people at the Federal Bureau of Prisons need to

12  make any decision at all about you, the very first document

13  they always consult is the presentence report.  So, it's

14  important that it be complete and accurate.  Do you understand?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.  David, give us a sentencing

17  date.  Make it four months out.

18          COURTROOM ADMINISTRATOR:  Friday, May 15, 2015, at

19  10:00 o'clock a.m.

20          THE COURT:  Friday, May 15.

21          COURTROOM ADMINISTRATOR:  Yes, Your Honor.

22          MR. ALBREGTS:  Your Honor, my only comment -- and I

23  think the government would concur with these comments -- is

24  there may -- there is obviously going to be a lot of sentencing

25  issues, with guideline analysis, and facts, and related things,

1   so it may be a longer sentencing hearing.

2             Having said that, we are also going to be sitting

3   down -- it's not like we are not going to be talking with the

4   government about these issues and see if we can settle some in

5   the interim.

6             THE COURT:  Sure.

7             MR. ALBREGTS:  But that's probably not going to

8   happen until they are finished in the other trials.  So, I

9   don't know that we would be done with all of that by May 15th.

10  But if you want to keep that as a date, and we can filed a

11  stipulation, if we find that's necessary, whatever the Court's

12  pleasure.  I just want to notify you of these issues.

13            THE COURT:  And I appreciate that.  Mr. La Bella, I

14  will be glad to do that either way.  I mean, we can set it off

15  for July then.

16            MR. LA BELLA:  I think that would probably make most

17  sense, Judge, because if you sent a control date in July, that

18  will be good for us.  And I think Mr. Albregts and I are going

19  to sit down, and if we can't agree on issues, we are going to

20  certainly narrow issues for the Court, so we can say, "Judge,

21  you need to call a ball a strike."

22            THE COURT:  Yeah.

23            MR. LA BELLA:  "Here's -- here's what we can" --

24            THE COURT:  And I appreciate that.  I don't want to

25  cut that process short.  It's a -- you know, let the process

1  play out.

2          MR. ALBREGTS:  And I just knew July would be the

3  Court's suggestion, because my dad turns 80 in July, and we

4  have some family matters back in the Midwest.

5          THE COURT:  All right.

6          MR. ALBREGTS:  I don't know if the Court would see

7  fit for August.  We can try June.  I will leave that to the

8  Court, but July is not a good month.

9          THE COURT:  Well, with this, I mean, it's, I think,

10  longer rather than shorter.  Mr. La Bella, do you agree?  What

11  about August?  Right around the first of August?  Would that --

12          MR. LA BELLA:  I would of love to come to Las Vegas

13  in August, Your Honor.  That's my favorite time, so --

14          MR. ALBREGTS:  But I anticipate -- I anticipate

15  being -- you know, it's not like I will need that July to

16  prepare.  I anticipate, before I leave for those family

17  matters, to be fairly prepared for this.  So August should

18  work.

19          THE COURT:  All right.  I mean, the alternative is

20  June.  If you want, I can go either June or August.

21          MR. ALBREGTS:  I would prefer August.

22          THE COURT:  August, is that agreeable?  Is that

23  agreeable with you, Mr. La Bella?

24          MR. LA BELLA:  That's fine.  That give us enough time

25  to work it out.  We have the trial coming up, and we are going

1    to be as diligent as we can.  And there's going to be some time

2    we are going to spend with the probation department as well, so

3    I think that makes sense.

4              THE COURT:  All right.  Then so then let's do it --

5    set in August then, like early August.

6              COURTROOM ADMINISTRATOR:  Monday, August 3, 2015, at

7    10:00 a.m.

8              THE COURT:  Monday, August 3, 2015, at 10:00 a.m.

9    And then if -- depending on how things go, if you say, "Let's

10   move the sentencing up," we can move it up, or we can move it

11   back.

12             It's not like I am wedded to that date.  It had as to

13   go on that date.  Whenever the parties are ready to go, then we

14   can do that.  Of course there are other -- a number of other

15   sentencings that are going to take place, too.

16             MR. ALBREGTS:  Your Honor, the only other issue, I

17   believe the government has no opposition to Mr. Benzer being

18   continued on the same conditions of release.

19             THE COURT:  And that would be my intent.  I got a

20   report.  Have you even seen this, Mr. Albregts?

21             MR. ALBREGTS:  I have not.

22             THE COURT:  From Pretrial Services?  And they -- it's

23   their recommendation the defendant be continued on bond with

24   the current conditions of release.  Any objection to that?

25             MR. LA BELLA:  No objection, Your Honor.

1          THE COURT:  All right.  That will be the order of the

2    Court.

3          MR. ALBREGTS:  Thank you, Your Honor.

4          THE COURT:  Anything else then?

5          MR. ALBREGTS:  Nothing.

6          MR. LA BELLA:  Nothing for the government, Your

7    Honor.

8          MR. ALBREGTS:  No, Your Honor.

9          THE COURT:  Thank you.  We will be in recess.

10          (Recess, 11:11 a.m.)

11

12                              --oOo--

13                    COURT REPORTER'S CERTIFICATE

14

15       I, KATHERINE EISMANN, Official Court Reporter, United

16    States District Court, District of Nevada, Las Vegas, Nevada,

17    certify that the foregoing is a correct transcript from the

18    record of proceedings in the above-entitled matter.

19

20    Date:  January 28, 2015.

21                         /s/ **Katherine Eismann**

22                              Katherine Eismann, CSR CRR RDR

23

24

25